**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **WILLIAM J. BOSACK,** | : | **Bankruptcy No. 10-27495-BM** |
| | : | |
| Debtor. | : | **Chapter 7** |
| ...................................................... | :................................................................ | |
| **James R. Walsh, Chapter 7 Trustee,** | : | |
| Movant, | : | |
| | : | |
| v. | : | **Related to Doc. No. 25** |
| | : | |
| **William J. Bosack**, | : | |
| Respondent. | : | |

Appearances:    Roger P. Poorman, for the Chapter 7 Trustee.
                Robert O. Lampl, for William J. Bosack.

<u>**MEMORANDUM OPINION**</u>

James Walsh, the Chapter 7 Trustee for the above-captioned debtor

(hereafter "the Trustee"), objects to the amended exemption that William Bosack,

such debtor (hereafter "the Debtor"), has taken in monthly commissions that the

Debtor continues to receive post-petition.  The Court held a trial on the Trustee's

exemption objection on April 25, 2011.  The parties subsequently filed post-trial

briefs.

After considering the positions of both parties, as well as the evidence

produced at trial, the Court sustains the Trustee's exemption objection.

However, as set forth below, the Court determines that a relatively small

percentage of such commissions are attributable to the post-petition efforts of the

Debtor.  Such relatively small percentage, therefore, does not constitute property

of the Debtor's bankruptcy estate, and may not be utilized to pay pre-petition

creditors of the Debtor.  The balance of such commissions constitutes

bankruptcy estate property, none of which may be exempted by the Debtor and,

thus, all of which may be utilized by the Trustee to pay pre-petition creditors of

the Debtor.

## STATEMENT OF FACTS

On February 20, 2010, the Debtor and Glacial Energy of Pa, Inc.

(hereafter "Glacial") executed a document entitled "Glacial Energy Agent

Agreement" (hereafter "the Agent Agreement").  Under the Agent Agreement, the

Debtor was – and presently remains – engaged by Glacial to solicit customers to

purchase their electric utility service from Glacial.  According to the Agent

Agreement, the Debtor's compensation thereunder is to consist of monthly

commissions based on the electric usage of those customers of the Debtor who

ultimately enter into electric utility service contracts with Glacial.  The Debtor is

entitled to continue to receive such commissions for as long as his customers

continue to purchase and pay for electric service through Glacial (hereafter the

"Residual Commissions").

According to paragraph 4 of the Agent Agreement, Glacial is obligated to

pay Residual Commissions to the Debtor even if Glacial fails to extend the Agent

Agreement beyond its initial one-year term.  However, such paragraph 4 also

reveals that Glacial may cease paying Residual Commissions to the Debtor if the

Debtor "has been terminated for cause due to material breach of th[e Agent

A]greement."  According to paragraph 6 of the Agent Agreement, it "may be

terminated immediately by either Party at its sole option if the other Party fails to

2

perform any material duty, obligation, covenant and agreement and such default continues longer than ten (10) days." Paragraph 1 of the Agent Agreement reflects that, among the Debtor's responsibilities under such agreement, are that the Debtor "work diligently on behalf of Customers to successfully resolve with Glacial Energy, as efficiently as possible, any disputes arising under ... [the Debtor's] Customer Contracts and any issues that may arise as part of the customer support process."

According to documentation that the Debtor testified he personally prepared just prior to trial, he successfully negotiated, executed, and submitted to Glacial seventeen (17) different customer contracts (hereafter the "Customer Contract(s)") during the period from May 20, 2010, through September 28, 2010. The Debtor testified that he executed one additional Customer Contract in January 2011.

Paragraph 7 of the Agent Agreement states that "[t]he Parties' relationship to each other in the performance of this Agreement is that of independent contractor. Nothing in this Agreement is intended to imply a joint venture, partnership, association[,] principal-Agent, ... fiduciary, or employer-employee relationship between Glacial Energy and" the Debtor." In connection with the Debtor's receipt of the Residual Commissions in 2010, he received a Federal Income Tax Form 1099-MISC that reflected that (a) he earned $11,687.23 in "Nonemployee compensation" for such year, and (b) no federal income tax was withheld from such compensation.

Between July 2010 and October 2010 the Debtor, in addition to his

independent contractor arrangement with Glacial, occupied a salaried employee position with Glacial, for which he earned in excess of $4,000 per month.  The Debtor received a 2010 Federal Income Tax Form W-2 in connection with such employment.

The Debtor is presently employed on a full-time, 40 hour/week basis with First Choice Loan Services, Inc. (hereafter "First Choice"), where he has been so employed for the past one and one-half years.  In addition to such full-time employment, the Debtor testified that he devotes between one to three hours per week to continue to service the Customer Contracts.  The Debtor is a college graduate who formerly owned and operated his own mortgage brokerage business.

On October 21, 2010, the Debtor commenced the instant Chapter 7 bankruptcy case.  Just weeks prior to that the Debtor learned that his salaried employee position with Glacial would be terminated at the end of October 2010; such employment actually was terminated at such date.  However, the Debtor did not commence the instant bankruptcy case on an emergency basis, which is evidenced by the fact that he (a) filed all of his bankruptcy schedules at the same time that he filed the bankruptcy petition, and (b) completed the required pre-bankruptcy credit counseling course on August 26, 2010, which date is almost two months before when he commenced the instant case.

Even though the Debtor did not commence the instant case on an emergency basis, he failed to disclose any information regarding either his employment or his independent contractor arrangement with Glacial in any of his

4

originally-filed Bankruptcy Schedules, or in response to Questions 1 and 2 in his

originally-filed Statement of Financial Affairs.  Despite the fact that the Debtor

failed to so disclose any such information regarding income that he earned from

Glacial, he (a) signed his bankruptcy petition, the declarations concerning his

Bankruptcy Schedules and his Statement of Financial Affairs, and his Declaration

Re: Electronic Filing of Petition, Schedules & Statements, (b) testified that he

personally reviewed all of the documentation that was filed regarding his

bankruptcy case, and (c) conceded that he understood that, by signing the

documentation that was filed with the Court, he was thereby declaring under

penalty of perjury that the information provided therein was true and accurate to

the best of his knowledge.

In November and December 2010 the Debtor received Residual

Commissions of, respectively, $1,301.60 and $1,201.60.  Despite receiving such

Residual Commissions, the Debtor at that time neither amended his Bankruptcy

Schedules and Statement of Financial Affairs nor notified anyone that he had

received such money.  Instead, the Debtor converted such Residual

Commissions to his own use.

On January 7, 2011, the Debtor's § 341 Meeting of Creditors was held.  It

was not until such meeting that the Debtor first disclosed to the Trustee that he

had received, and would continue to receive, the Residual Commissions.  The

Debtor maintains that he volunteered such information regarding the Residual

Commissions at such meeting, and that his failure to disclose the same earlier

either in his Bankruptcy Schedules and Statement of Financial Affairs or

otherwise was simply the result of an honest mistake.  However, the Debtor did

not volunteer such information prior to, or at the commencement of such

meeting; instead, the Debtor disclosed such information only after being asked at

such meeting by the Trustee whether he was receiving any income other than

from his current employment with First Choice.

On January 28, 2011, the Debtor amended his Bankruptcy Schedule B to

disclose that he possessed the right to receive Residual Commissions

approximating $1,200 per month.  No mention in such schedule is made of the

Residual Commissions that he received and spent in the months of November

and December 2010, or Residual Commissions of $1,015.98 that he received in

January 2011.  With respect to the January 2011 Residual Commissions, the

Debtor spent the same (a) even though he received them after the conclusion of

the § 341 Meeting, (b) without receiving permission to so spend from either the

Trustee or the Court, and (c) without disclosing the amount thereof in his

Bankruptcy Schedule B.  The Debtor has never bothered to amend the

responses to Questions 1 and 2 in his Statement of Financial Affairs to reflect his

receipt of either the Residual Commissions or his employment in 2010 with

Glacial.  On January 28, 2011, the Debtor also amended his Bankruptcy

Schedule C so as to exempt in full the Residual Commissions pursuant to 42

Pa.C.S.A. § 8127.

Beginning with February 2011 the Residual Commissions have been paid

directly to the Trustee, who has then been holding them in escrow pending this

Court's decision in the instant matter.  The Trustee has received Residual

6

Commissions totalling $3,526.36 for the months of February 2011 – April 2011.

According to the Trustee, the post-January 2011 Residual Commissions are

presently the only assets that exist and that would be available to make any

distribution to the Debtor's pre-petition unsecured creditors.  According to the

Debtor's Bankruptcy Schedules D and F, the Debtor has a total of $1,297,770 in

pre-petition unsecured indebtedness.[1]

## DISCUSSION

The Debtor has elected to take the exemptions available to him under 11

U.S.C. § 522(b)(3), that is essentially Pennsylvania state exemptions and the

property that he owns with his nondebtor wife as a tenant by the entirety.  The

Debtor maintains that he may exempt all of the Residual Commissions pursuant

to 42 Pa.C.S.A. § 8127.  The Trustee disagrees, contending that § 8127 does not

operate to exempt the Residual Commissions.  The Trustee also objects to the

Debtor's exemption of the Residual Commissions on the ground that the Debtor

intentionally concealed the same from the Trustee.  With respect to the latter

position of the Trustee, the Debtor contends that it was only by accident that he

failed to disclose the Residual Commissions.

Finally, but actually as a threshold matter, the Debtor contends that,

because he performed significant post-petition services on the Customer

Contracts, and since such contracts could be cancelled by his customers at any

---

[1]The Debtor's Schedule F reveals that the Debtor has $937,884 in pre-petition unsecured
debt.  The Debtor's Schedule D indicates that he has pre-petition secured debt equal to
$618,581.25, but that $258,695.25 of such amount is actually unsecured because the value of the
collateral is insufficient to cover the entirety of the debt which it secures.

time, none of the Residual Commissions constitute property of his bankruptcy

estate; instead, such commissions, according to the Debtor, constitute his post-

petition earnings which are shielded from his bankruptcy estate pursuant to 11

U.S.C. § 541(a)(6).  The Trustee contends otherwise, arguing that, because the

Residual Commissions are substantially, if not entirely, rooted in the Debtor's

pre-petition activities, and since the payment of such commissions is dependent

only upon his customers' continued payment for the purchase of electricity from

Glacial, the entirety of such commissions constitute property of the Debtor's

bankruptcy estate.

**I.**      **Whether the Residual Commissions constitute property of the
Debtor's bankruptcy estate?**

Because the issue of whether the Debtor can exempt the Residual

Commissions only becomes relevant if such commissions constitute property of

his bankruptcy estate, the Court shall address first whether the Residual

Commissions are property of the Debtor's bankruptcy estate.  The "Trustee,

[essentially] as plaintiff [herein], has the burden of proof on his claim" that the

Residual Commissions constitute bankruptcy estate property.  In re Dunn, 436

B.R. 744, 747 (Bankr.M.D.Ga. 2010).  "The preponderance of [the] evidence

standard applies to this [portion of the] proceeding."  Id.

At the outset, the Court holds that any Residual Commission that the

Debtor has received or will receive respective of the Customer Contract that the

Debtor executed in January 2011 (hereafter "the January 2011 Customer

Contract") cannot constitute property of his bankruptcy estate.  The Court so

8

holds because (a) January 2011 is several months post-petition, (b) the Debtor

did not accrue a contractual right to receive any commission respective of the

January 2011 Customer Contract prior to its execution in January 2011, and (c)

any such commission was thus earned wholly post-petition, meaning that it would

constitute post-petition income of the Debtor that is shielded from his bankruptcy

estate pursuant to § 541(a)(6).  Going forward, and for the same reason just set

forth with respect to the January 2011 Customer Contract, any Residual

Commission that pertains to any Customer Contract that the Debtor might

execute in the future also will not constitute a part of his bankruptcy estate.

   With respect to those Customer Contracts that were executed pre-petition

(which the Court understands to number 17 in all and which the Court will

hereafter refer to as "the 17 Customer Contracts"), the Court holds first that, if, as

the Trustee argues, the payment of the Residual Commissions respective thereof

(hereafter "the 17 Contract Residual Commissions") is dependent only upon the

Debtor's customers' continued payment for the purchase of electricity from

Glacial, then the entirety of such commissions constitute bankruptcy estate

property.  That is because (a) "commissions earned wholly prepetition, but paid

postpetition, become in their entirety property of the [bankruptcy] estate," In re

Golde, 253 B.R. 843, 846 (Bankr.N.D.Ohio 2000), and (b) commissions are

earned wholly prepetition if "all the work necessary to earn the commission has

occurred prepetition," Id.; see also In re Carey, 150 B.R. 196, 199

(Bankr.N.D.Ohio 1992) (plan funds were earned wholly pre-petition and, thus,

constituted bankruptcy estate property because the "[d]ebtor [therein] need not

9

perform any further services to be entitled to payment of at least some of these funds").

Having so held, however, the Court next holds that payment of the 17 Contract Residual Commissions, rather than being entirely dependent upon the Debtor's customers' continued payment for the purchase of electricity from Glacial, is instead also partly dependent upon the Debtor's future performance of services regarding the 17 Customer Contracts.  The Court so holds because, as set forth above, according to the Agent Agreement, (a) Glacial may cease paying Residual Commissions to the Debtor if he is terminated for cause due to a material breach of such agreement, (b) Glacial may terminate such agreement immediately at its sole option if the Debtor fails to perform any material duty, obligation, or covenant of such agreement and such default continues for longer than ten days, and (c) one such material duty or obligation of the Debtor under such agreement is that he work on behalf of his customers to successfully resolve with Glacial Energy any disputes that might arise under the Customer Contracts, as well as any issues that may arise as part of the customer support process.  Therefore, the 17 Contract Residual Commissions have both a pre-petition component and a post-petition component.  Consequently, "the postpetition earnings exception contained in § 541(a)(6) is at least to a certain extent applicable to ... [such] commissions."  Golde, 253 B.R. at 847.

There presently exists what can be characterized as a split of authority as to how ... commissions, having both prepetition and postpetition components, are to be handled for purposes of

10

> § 541(a)(6).  The first group of cases ... holds that where the debtor
>
> must perform any postpetition services to become entitled to a ...
>
> commission, that such a commission is [entirely] encompassed
>
> within the earnings exception contained in § 541(a)(6), and
>
> therefore does not become property of a debtor's bankruptcy
>
> estate.

Id. (citations omitted); *see also* In re Bagen, 186 B.R. 824, 828 (Bankr.S.D.N.Y.

1995) (citing similar line of cases).  The Golde court then turned to the decision in

In re Wu for a description of how the second line of cases deals with

commissions that have both a pre-petition component and a post-petition

component.  The Wu court held that:

> The proper analysis ... is to first determine whether any postpetition
>
> services are necessary to obtaining the payments at issue.  If not,
>
> the payments are entirely rooted in the pre-bankruptcy past, and
>
> the payments will be included in the estate.  If some postpetition
>
> services are necessary, then courts must determine the extent to
>
> which the payments are attributable to the postpetition services and
>
> the extent to which the payments are attributable to prepetition
>
> services.  That portion of the payments allocable to postpetition
>
> services will not be property of the estate.  That portion of the
>
> payments allocable to prepetition services or property will be
>
> property of the estate.

In re Wu, 173 B.R. 411, 414-15 (B.A.P. 9th Cir. 1994) (internal quotations and

11

citations omitted) (quoted in Golde, 253 B.R. at 848).

This Court determines that the approach set forth in Wu is the appropriate

one for dealing with commissions that have both a pre-petition component and a

post-petition component and, thus, the Court adopts such approach.  This Court

finds that the approach in Wu is appropriate for precisely the reasons that the

Golde court also adopted such approach, to wit:

> the holding contained in In re Wu is more in line with the distinction the
>
> Bankruptcy Code makes between prepetition and postpetition property.  In
>
> particular, it is this Court's position that merely because a debtor has to
>
> perform a postpetition service to become entitled to an item of property,
>
> does not thereby mean that such property does not have prepetition
>
> attributes which become property of the estate under § 541(a).  Stated
>
> differently, payments for prepetition services are not excludable from the
>
> estate simply because postpetition services are required to receive
>
> payment.  Moreover, in this Court's opinion, apportioning property
>
> between its prepetition and postpetition components strikes the proper
>
> balance of assuring that any prepetition resources that a debtor has
>
> available are used to pay his or her creditors, while at the same time
>
> ensuring that the "fresh start" policy underlying the Bankruptcy Code is
>
> furthered.

Golde, 253 B.R. at 848 (citations omitted); *see also* Bagen, 186 B.R. at 829

(holding in a fashion identical to the decisions in Wu and Golde).

This Court finds that the approach in Wu is appropriate for precisely the reasons that the
Having adopted the apportionment method of dealing with commissions

that have both a pre-petition component and a post-petition component, the Court must next apportion the 17 Contract Residual Commissions between their pre-petition and post-petition components. "[M]aking any apportionment [is] by its very nature speculative," Golde, 253 B.R. at 848, "and an apportionment may be difficult in some cases," In re Malloy, 2 B.R. 674, 676-77 (Bankr.M.D.Fla. 1980). However, the Court finds a fair and reasonable apportionment of the 17 Contract Residual Commissions to be that 93% thereof is attributable to the Debtor's pre-petition services and 7% thereof is allocable to his post-petition services. The Court arrives at such apportionment, in part, because (a) it finds that the 17 Contract Residual Commissions' value is overwhelmingly attributable to the origination of the 17 Customer Contracts, which origination occurred entirely pre-petition, and (b) the Trustee, who has the burden of preponderantly proving that such commissions constitute bankruptcy estate property, has thus preponderantly proven that 93% of such commissions are allocable to the Debtor's pre-petition services. The Court attributes 7% of the 17 Contract Residual Commissions to the Debtor's post-petition services because (a) the Debtor testified at trial that he spends up to three hours a week post-petition servicing the 17 Customer Contracts, (b) the Trustee failed to preponderantly refute such testimony, (c) the Court will thus accept that the Debtor spends 3 hours per week post-petition servicing such contracts, (d) the Debtor also testified at trial that he works precisely 40 hours per week in his present full-time post-petition capacity with First Choice, (e) 3 hours divided by a total of 43 hours (i.e., 40 hrs. + 3 hrs.) yields a ratio of 7%, and (f) the Debtor thus spends

13

approximately 7% of his post-petition workweek servicing such contracts.  *See*

Malloy, 2 B.R. at 677 (the Malloy court employed a similar apportionment

scheme).

Therefore, 93% of any of the 17 Contract Residual Commissions

constitutes bankruptcy estate property.  The remaining 7% thereof constitutes

post-petition income of the Debtor that is shielded from his bankruptcy estate

pursuant to § 541(a)(6).

**II.    Whether the Debtor can exempt that portion of the Residual
         Commissions that constitutes bankruptcy estate property?**

Having determined that 93% of any of the 17 Contract Residual

Commissions constitutes bankruptcy estate property, the Court must next

ascertain whether the Debtor can exempt all or some portion of the same.  For

the reasons set forth below, the Court holds that the Debtor cannot exempt any

portion of such 93% of the 17 Contract Residual Commissions.

First, the sole vehicle by which the Debtor attempts to exempt that portion

of the 17 Contract Residual Commissions that is bankruptcy estate property is 42

Pa.C.S.A. § 8127.  The portion of § 8127 that is pertinent to the instant matter

provides that "[t]he wages, salaries and commissions of individuals shall while in

the hands of the employer be exempt from any attachment, execution or other

process."  42 Pa.C.S.A. § 8127(a) (Purdon's 2011).  Such statutory provision, by

its express terms, only applies if and when funds owed to an individual are held

by such individual's employer.  Therefore, and as a corollary of the preceding

point, such statutory provision will not apply if and when funds owed to an

14

individual are held by someone other than such individual's employer.  Based upon the foregoing, and as a matter of law, such statutory provision has no application when an individual works for another as an independent contractor because, in such event, the person or entity for whom such individual works is not, indeed cannot be, such individual's employer.  *See* Houston-Starr Company v. Davenport, 324 A.2d 495, 496 (Pa.Super.Ct. 1974); Huck-Gerhardt Co., Inc. v. Davies, 3 A.2d 963, 965-66 (Pa.Super.Ct. 1939).

Unfortunately for the Debtor, the Court finds, and quite comfortably, that the Debtor's capacity is that of an independent contractor when he sells Customer Contracts and thereby earns Residual Commissions.  Paragraph 7 of the Agent Agreement clearly states as much, as well as that Glacial is not the Debtor's employer if and when the Debtor sells Customer Contracts and earns Residual Commissions.  The tax treatment that the Debtor and Glacial accorded to such arrangement also evidences that Glacial was not the Debtor's employer, and that the Debtor operated as an independent contractor, when the two did business within the confines of such arrangement.  Consequently, the Debtor cannot utilize § 8127 to exempt any part of the 93% of the 17 Contract Residual Commissions that constitutes bankruptcy estate property.

Second, debtors in bankruptcy, as a matter of law, will be barred from claiming bankruptcy estate property as exempt if they are found, by a preponderance of the evidence, to have intentionally concealed or failed to disclose bankruptcy estate property, *see* In re Nicholson, 435 B.R. 622, 631-34 (B.A.P. 9th Cir. 2010); In re Rolland, 317 B.R. 402, 414-15 (Bankr.C.D.Cal.

15

2004); In re Jones, 446 B.R. 466, 474 (Bankr.D.Kan. 2011); In re Varney, 449

B.R. 411, 418 (Bankr.D.Idaho 2011); In re Wood, 291 B.R. 219, 226 (B.A.P. 1st

Cir. 2003).[2]  The Court holds that the Trustee has preponderantly proven that the

Debtor intentionally concealed and/or failed to disclose the 17 Contract Residual

Commissions when he filed for bankruptcy protection and for more than two

months thereafter, or during the period between October 21, 2010 (when the

Debtor filed for bankruptcy), and January 7, 2011 (when the Debtor's § 341

Meeting of Creditors was held).  Therefore, it really matters not whether the

Debtor could exempt via § 8127 any part of the 93% of the 17 Contract Residual

Commissions that constitutes bankruptcy estate property because, even if he

could do so, he is barred from doing so by virtue of his having intentionally

concealed and/or failed to disclose such commissions during a significant portion

of the bankruptcy process.

The Court finds that the Debtor so intentionally concealed and/or failed to

disclose, rather than simply forgot about, the 17 Contract Residual Commissions

for several reasons.  First, the Court does not believe that the Debtor innocently

forgot about such commissions when he failed to originally disclose them in his

bankruptcy schedules that were filed on October 21, 2010, because, as the Court

---

[2]"Courts are split over the question of whether bad faith [of a debtor in an exemption proceeding] ... must be established by a preponderance of the evidence or by clear and convincing evidence." Rolland, 317 B.R. at 415 n.19 (citing the decision in In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993), which decision is among those relied upon in the instant matter by the Trustee, as one wherein the clear and convincing evidence standard was adopted).  This Court adopts a preponderance of the evidence as the proper standard of proof when one objects to a debtor's exemption, and the Court so rules for precisely the same reasons that are set forth by many of the other courts that likewise adopt such standard of proof in exemption proceedings. See Nicholson, 435 B.R. at 631-34; Rolland, 317 B.R. at 415 n.19; In re Ford, 492 F.3d 1148, 1154-55 (10th Cir. 2007); In re Daniels, 270 B.R. 417, 422 n.2 (Bankr.E.D.Mich. 2001).

16

understands it, he was then receiving such commissions and had been for a period of time leading up to October 2010.  Second, the Court finds it hard to believe that the Debtor would have also honestly forgot to disclose on October 21, 2010, any information regarding his employment with Glacial, especially given that such employment was terminated just weeks before October 21, 2010. Third, the Court cannot accept that, for the entire period between October 21, 2010, and January 7, 2011, the Debtor just innocently forgot about such commissions and his right to continue to receive them, particularly since at the same time he was spending such commissions that he received for the months of November and December 2010.  Fourth, the Court cannot find that it was an innocent oversight on the Debtor's part when, for the entirety of such period, he failed either to amend his bankruptcy schedules or to notify the Trustee that he had received, and would continue to receive, such commissions; the same goes for the Debtor's failure during such time to amend his schedules or to notify the Trustee regarding his employment relationship with Glacial during 2010.[3]

Finally, the Court is simply taken aback by the fact that (a) the Debtor, after having finally divulged to the Trustee the existence of the 17 Contract Residual Commissions on January 7, 2011, nevertheless proceeded subsequently, without any permission, to spend such commission that he received for the month of January 2011, (b) he would not have voluntarily paid

---

[3]The Court also holds that, because the evidence is so overwhelming in support of a finding that the Debtor intentionally concealed and/or failed to disclose the 17 Contract Residual Commissions, the Court would be compelled to rule as it does even if the appropriate standard of proof was the clear and convincing evidence standard.

17

back – or at least offered to pay back – to the bankruptcy estate all of such commissions that he received and then spent post-petition, to then be held in escrow pending the outcome of the instant matter, and (c) he has not yet amended the responses to Questions 1 and 2 in his Statement of Financial Affairs to reflect his receipt of either the Residual Commissions or his employment in 2010 with Glacial.

For all of the foregoing reasons, the Debtor's exemption of the Residual Commissions that constitute bankruptcy estate property, that is 93% of any of the 17 Contract Residual Commissions, is denied; therefore, the Trustee's objection to such exemption is sustained.

## CONCLUSION

For all of the foregoing reasons, the Court sustains in part and overrules in part the Trustee's exemption objection.

In particular, any Residual Commission that the Debtor has received or will receive respective of the January 2011 Customer Contract cannot constitute property of his bankruptcy estate.  As well, 7% of any of the 17 Contract Residual Commissions does not constitute bankruptcy estate property.  With respect to the property just mentioned that has been determined not to constitute bankruptcy estate property, the Trustee's exemption objection is necessarily overruled.

However, the remaining 93% of any of the 17 Contract Residual Commissions constitutes bankruptcy estate property, for which property the Trustee's exemption objection is sustained, that is the Debtor cannot exempt such property.  Furthermore, because 93% of the $2,503.20 worth of Residual

18

Commissions that the Debtor received in, and retained from, November and

December 2010 constitutes bankruptcy estate property which the Debtor has

unjustifiably converted to his own use, the Debtor shall be directed to

immediately deliver to the Trustee cash equal to $2,327.98.  Likewise, the Debtor

shall be directed to immediately hand over to the Trustee cash equal to 93% of

that portion of the $1,015.98 in Residual Commissions that he received in, and

retained from, January 2011, that is not attributable to the January 2011

Customer Contract.

**BY THE COURT**


 **/s/**_____
**BERNARD MARKOVITZ,**
**U.S. Bankruptcy Judge**

**DATED:        August 8, 2011**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **WILLIAM J. BOSACK,** | : | **Bankruptcy No. 10-27495-BM** |
| | : | |
| Debtor. | : | **Chapter 7** |
| .................................................... | :................................................................ | |
| **James R. Walsh, Chapter 7 Trustee,** | : | |
| Movant, | : | |
| | : | |
| v. | : | **Related to Doc. No. 25** |
| | : | |
| **William J. Bosack**, | : | |
| Respondent. | : | |

<u>**ORDER OF COURT**</u>

　　　**AND NOW,** this **8th day** of **August, 2011**, for the reasons, and utilizing

the nomenclature, set forth in the accompanying Memorandum Opinion of the

same date; it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a)　　the Trustee's exemption objection is sustained in part and overruled in

　　　　part, consistent with the details as expressed in the Conclusion to the

　　　　accompanying Memorandum Opinion of the same date; and

(b)　　the Debtor is directed to immediately deliver to the Trustee cash equal to

　　　　$2,327.98, plus 93% of that portion of the $1,015.98 in Residual

　　　　Commissions that he received in, and retained from, January 2011, that is

　　　　not attributable to the January 2011 Customer Contract – should the

　　　　Debtor promptly comply with this particular directive from the Court, then

the Court will not transmit this portion of the instant matter to the U.S.

Trustee for noncivil action.

**BY THE COURT**


_**/s/**_____
**BERNARD MARKOVITZ,**
**U.S. Bankruptcy Judge**

copies to:

Robert O Lampl
960 Penn Avenue, Suite 1200
Pittsburgh, PA 15222

Roger Poorman, Esq.
James R. Walsh, Trustee
Spence, Custer, Saylor, Wolfe & Rose
P. O. Box 280
Johnstown, PA 15907

Kathleen Robb, Esq.
Office of the U. S. Trustee
Liberty Center, Suite 970
1001 Liberty Avenue
Pittsburgh, PA 15222

2